**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**AUDREY M.,**

        **Plaintiff,**

v.                                          **Civil Action 2:21-cv-945**
                                              **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

**OPINION AND ORDER**

Plaintiff, Audrey M., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties in this matter consented to the Undersigned pursuant to 28 U.S.C. § 636(c). (Docs. 4, 5). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

**I. BACKGROUND**

Plaintiff filed her applications for DIB and SSI on June 25, 2018, with an amended onset date of disability of March 28, 2018. (Tr. 246–59, 296). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on March 26, 2020. (Tr. 31–48). The ALJ denied benefits in a written decision on April 10, 2020. (Tr. 10–30). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on March 8, 2021 (Doc. 1), and the Commissioner filed the administrative record on September 3, 2021 (Doc. 10). The matter has been briefed and is ripe for consideration. (Docs. 15, 16).

### A. Relevant Hearing Testimony

The ALJ summarized the reports presented to the administration and testimony from Plaintiff's hearing:

> [Plaintiff] alleged difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using her hands (6E/6). [Plaintiff] alleged that she can only lift 10 pounds, stand for 15 minutes at one time, sit for 2 hours at one time, and walk one-quarter mile at one time (6E/6). [Plaintiff] also alleged difficulty with memory, completing tasks, and concentration, but not with understanding, following instructions, or getting along with others (6E/6) [Plaintiff] alleged she has "no problems" getting along with authority figures and she has never be[en] fired or laid off from a job for difficulty getting along (6E). [Plaintiff] alleged that she watches television, does puzzles, and reads on a daily basis without difficulty, and she can drive, shop, manage her own finances, manage her own medications, and spend time with others (6E). [Plaintiff] testified that she has headaches two to four times per week (Testimony). [Plaintiff] also testified that she is in chronic, constant pain (Testimony).

(Tr. 18).

> [Plaintiff]'s more significant problem relates to her reported migraine type headaches (Testimony). [Plaintiff] testified that she has headaches two to four times per week and is in constant pain (Testimony). However, [Plaintiff] also alleged that she watches television, does puzzles, and reads, every day without any difficulty (6E).

(Tr. 19).

### B. Relevant Medical Evidence:

The ALJ summarized the medical records as to Plaintiff's hemiplegic migraines:

> *** [A]s of February 2020, [Plaintiff] had not yet complied with smoking cessation, and tobacco smoke is known to cause or exacerbate migraine-type headaches (20F/40, 5F/4). In March 2018, [Plaintiff] was recommended to undergo a septoplasty to correct a deviated septum that was suspected to be the cause of [Plaintiff]'s headache reports (18F/78). [Plaintiff]'s CT scan of her head was negative (18F/20). Notes from April 2018 indicate that [Plaintiff] was scheduled to

2

return in two to three weeks for the septoplasty, however, the surgical notes are not found in the record (18F/83). In any event, [Plaintiff] presented for physical consultative examination in October 2018, however, she did not make mention of any septoplasty (9F). Instead, [Plaintiff] reported taking Fioricet medication after the onset of a headache, but not a headache prophylactic (9F/1). [Plaintiff] told the examiner that she has one to two headaches per week, despite testifying that she has two to four per week (9F versus Testimony). In November 2018, [Plaintiff] referred herself to a neurologist, Dr. Zhao, for her headaches (13F/1). At that time, she told the provider that she has at least one headache per week, "sometimes two a week," with associated symptoms such as photophobia and phonophobia (13F/1). At that time, [Plaintiff] admitted that taking Fioricet medication works (13F/1). On examination, [Plaintiff] denied headache, and had normal physical examination, including neurological findings (13F/2). [Plaintiff]'s provider prescribed her a prophylactic medication to prevent migraines, Amitriptyline 25mg (13F/3). Curiously, in March 2018, [Plaintiff] was prescribed this medication, but apparently was not taking it because she denied taking it at her October 2018 consultative examination (5F/3, 9F). [Plaintiff] began taking her headache prophylactic, and notably, it was reduced from 25mg to 10 mg, suggesting that [Plaintiff]'s headaches improved, and she did not return to Dr. Zhao (20F, 18F, 13F). In December 2018, [Plaintiff] denied having headache (15F/2). [Plaintiff]'s subjective allegations about her headaches, especially the frequency and lack of improvement with new medication are inconsistent with the objective record, including the level of treatment, the frequency of treatment, and [Plaintiff]'s neurology records (13F, SSR 16-3p). [Plaintiff] had one of her physicians, Dr. Kratz, complete an opinion on a form prepared by her attorney (11F, 19F). Dr. Kratz concluded that [Plaintiff] is indeed capable of "low stress work," but that she can only lift less than 10 pounds, and sit, and stand and/or walk for about two hours per day (19F). Dr. Katz' findings are inconsistent with [Plaintiff]'s own statements that she can lift 10 pounds, and the overall objective record, including other physician opinion evidence (1A, 5A, 9F). Dr. Kratz'[s] own notes show that [Plaintiff]'s physical examinations were normal, despite his diagnosis of fibromyalgia (17F/14, 17F/42, 20F/1, 20F/28, 20F/26, Record). In November 2018, [Plaintiff] presented to "keep working hard at exercise 30-45 minutes 5-6 days per week" and he has repeatedly told her to stop smoking (20F/1-2). However, [Plaintiff] has not stopped smoking (Record). Dr. Kratz and her physical examination was normal, and he told [Plaintiff] On December 13, 2018, Dr. Kratz diagnosed [Plaintiff] with fibromyalgia, however, [Plaintiff]'s physical examination was normal (20F/15). In February 2020, [Plaintiff] presented to Dr. Kratz complaining of fibromyalgia, and Dr. Kratz performed an examination that showed normal findings, however, he did not note a tender-point examination (20F/39). Moreover, [Plaintiff]'s other physical examinations of record are consistently normal (Record). Other physician opinion evidence indicates that [Plaintiff] is limited to light work, with additional limitations. The combination of [Plaintiff]'s physical impairments were accounted for with a limitation to only light work, and additionally to postural movements, climbing, environmental irritants,

3

> work hazards, and ultimately, to simple, routine, and repetitive tasks, and work pace.

(Tr. 19–20).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through September 30, 2023 and has not engaged in substantial gainful activity since March 28, 2018, her amended alleged onset date of disability. (Tr. 15). The ALJ determined that Plaintiff suffered from the severe impairments of generalized anxiety disorder; major depressive disorder; hemiplegic migraines; fibromyalgia; and asthma. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equal a listed impairment. (Tr. 16).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: never climb ladders, ropes, or scaffolds; never crawl; occasionally climb ramps and stairs; occasionally balance, stoop, crouch, and kneel; avoid concentrated exposure to environmental irritants, such as fumes, odors, dusts, and gas; avoid poorly ventilated areas and industrial chemicals; avoid hazardous machinery and unprotected heights; limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple, work related decisions; and with few, if any, workplace changes.

(Tr. 18).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence and other evidence in the record for the reasons explained in this decision." (Tr. 19).

Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff is unable to

4

perform her past relevant work as a box assembler and assembler, but could perform the job duties of other unskilled, light exertional, representative occupations such as a folder and packager. (Tr. 22–23). He therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act, since March 28, 2018. (Tr. 23–24).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff argues that since the ALJ failed to accommodate her hemiplegic migraines in the RFC, the RFC is not supported by substantial evidence. (Doc. 15 at 4). Specifically, Plaintiff says the ALJ's RFC determination should have included limitations regarding absences or off-task

behavior resulting from her hemiplegic migraines. Yet, as identified by the Commissioner, "no doctor ever opined that Plaintiff would require any time off work nor any off-task time." (Doc. 16 at 10). Instead, Plaintiff relies upon the opinion of her treating physician, Dr. Charles Kratz, who stated that she would sometimes need to take one- to two-minute breaks at an unknown frequency, and that her impairments were likely to produce "good days" and "bad days." (Doc. 15 at 4 (citing Tr. 692, 694)).

Because Plaintiff filed her application after March 27, 2017, it is governed by the new regulations describing how evidence is categorized, considered, and articulated when an RFC is assessed. *See* 20 C.F.R. § 416.913(a), 416.920c (2017). A [Plaintiff]'s RFC is an assessment of "the most [a [Plaintiff]] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A [Plaintiff]'s RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the [Plaintiff]'s] medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)–(5). Although there are five factors, supportability and

consistency are the most important, and the ALJ must explain how they were considered. § 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*.

When discussing Dr. Kratz's opinion, the ALJ determined:

> On November 20, 2018, and January 15, 2020, the claimant's primary care physician, Dr. Kratz, submitted opinions on forms prepared by the claimant's attorney representative (11F, 19F). Dr. Kratz concluded that the claimant can only sit, stand and/or walk for about two hours, and speculated that the claimant requires additional unscheduled breaks, but did not specify how many. Further, Dr. Kratz concluded that the claimant can lift less than 10 pounds, which is inconsistent with the claimant's own reports, other opinion evidence, and with the objective examination findings of record. The objective examinations of record show that the claimant has normal physical examinations despite her subjective reports. Dr. Kratz' opinion is contradicted by multiple physician opinions of record. Therefore, Dr. Kratz' opinion is not persuasive.

(Tr. 21–22).

First, Dr. Kratz's statements regarding what Plaintiff asserts are opined limitations were vague. As the ALJ identified, though Dr. Kratz "speculated that [Plaintiff] requires additional unscheduled breaks," he "did not specify how many." (Tr. 22). Indeed, Dr. Kratz indicated it was "unknown" how often Plaintiff would need additional unscheduled breaks, which he estimated would only last one to two minutes. (Tr. 692). And though Dr. Kratz suggested that Plaintiff's limitations were likely to produce "good days" and "bad days[,]" when he was then asked how many days per month Plaintiff was likely to be absent from work as a result of her impairments, he drew a question mark instead of selecting a response. (Tr. 694). Because these indeterminate speculations about Plaintiff were not accompanied by citations to objective medical evidence or any supporting explanations, it is apparent that the ALJ rated the supportability factor of the opinion low.

Second, the ALJ regarded Dr. Kratz's opinion as inconsistent with evidence from other medical sources. In the ALJ's words, the opinion was "contradicted by multiple physician opinions of record." (Tr. 22). Notably, the ALJ elsewhere considered the opinions of state agency reviewing physicians Bradley J. Lewis, M.D., and Mehr Siddiqui, M.D.:

> On October 31, 2018, and February 5, 2019, State Agency physicians, Dr. Lewis, and Dr. Siddiqui, reviewed the claimant's file and objective evidence (1A, 5A). State agency medical and psychological consultants are highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Act (SSR 17-2p). Dr. Lewis and Dr. Siddiqui concluded that the claimant can perform light work, with additional limitations. Dr. Lewis and Dr. Siddiqui's findings are consistent with the overall objective evidence and are supported by opinion evidence (9F, 10F). Therefore, Dr. Lewis and Dr. Siddiqui's opinions are persuasive.

(Tr. 21). Dr. Lewis did not opine any limitations regarding absences or off-task time in his proposed RFC. (Tr. 61–63). He explained that the "medical evidence shows a history of treatment for [Plaintiff's] conditions" and Plaintiff did not require "frequent emergency or inpatient treatment for [her] migraines." (Tr. 65). Similarly, Dr. Siddiqui, on reconsideration, opined no limitations regarding absences or off-task time (Tr. 96–98), and acknowledged that though Plaintiff had recently received a formal diagnosis of her migraines she was "put on meds that have seemed to reduce them[,]" and the migraines only required additional "noise and vibration restrictions to the RFC . . . ." (Tr. 98). So to whatever extent Dr. Kratz suggested Plaintiff had more serious work-related limitations due to her migraines, those suggestions were clearly inconsistent with the opinions the ALJ found persuasive.

Further, substantial evidence supports the ALJ's decision to decline to adopt limitations for off-task time and absences into the RFC. Though Plaintiff testified at the hearing that she has "headaches two to four times per week and is in constant pain" (Tr. 19), the ALJ determined that those "subjective allegations . . . especially the frequency and lack of improvement with new

8

medication are inconsistent with the objective records, including the level of treatment, the frequency of treatment, and the [Plaintiff's] neurology records" (Tr. 20). Specifically, the ALJ noted that records demonstrated that Plaintiff expressed less frequent headaches to examiners and medical providers. (*Id.*) (citing Tr. 515 (Plaintiff reporting one to two migraines a week); Tr. 538 (same)).

Regarding medication, the ALJ noted that Plaintiff's prescribed medication was at least somewhat effective at relieving symptoms. (*Id.*) (citing Tr. 515 (noting Plaintiff "takes prescriptions for Butalbital-acetaminophen-caffeine for relief of symptoms"); Tr. 538 (noting Plaintiff "[r]ecently started on Diclofenac prn, helps some")). Further, Plaintiff was prescribed a "prophylactic medication to prevent migraines" as early as March 2018. (*Id.*) (citing Tr. 419 (including Amitriptyline, the prophylactic medication, on Plaintiff's medications list)). However, she appeared to not be taking the medication, because she denied taking it in her October 2018 consultative examination. (*Id.*) (citing Tr. 516 (Amitriptyline not on medications list)). In November 2018, Plaintiff was again prescribed the same medicine. (*Id.* (citing Tr. 540 (recommending "Amitriptyline 25 mg 1–2 tablets nightly")). The medicine then appeared in later records, at a lower dosage, suggesting to the ALJ that Plaintiff had begun using the medicine and it had improved her headaches. (*Id.* (citing Tr. 605, 703)).

Plaintiff also chose to forgo other interventions to manage her migraines, suggesting that they were not as severe as she testified. For example, the ALJ noted that, as of February 2020, Plaintiff "had not yet complied with smoking cessation," though "tobacco smoke is known to cause or exacerbate migraine-type headaches." (*Id.* (citing Tr. 737, 420)). Further, Plaintiff was recommended a "septoplasty to correct a deviated septum that was suspected to be the cause of [her] headache reports." (Tr. 19–20 (citing Tr. 679)). The procedure was scheduled (*id.* (citing

9

Tr. 684 (noting that Plaintiff would be "coming back in a few weeks for a septoplasty")), but no corresponding surgical notes were found in the record and Plaintiff did not mention undergoing the surgery in subsequent examination (*id.* (citing Tr. 515–24)).

Finally, Plaintiff's neurological examinations were unremarkable. (Tr. 19 (citing Tr. 621 ("CT was negative"); Tr. 21 (citing Tr. 539 (noting normal findings on neurological exam)). And despite her migraines, Plaintiff was able to maintain her hobbies and interests, including watching television, doing puzzles, and reading, "every day without any difficulty." (Tr. 19 (citing Tr. 333)). In total, the ALJ's careful consideration of the evidence of record demonstrates that there is substantial evidence to support the ALJ's position that Plaintiff's migraines were not as frequent or severe as Plaintiff testified at the hearing, and restrictions in the RFC regarding off-task time and absences from work were not necessary.

Plaintiff further argues that the ALJ "erred in failing to fully consider the testimony of the vocational expert." (Doc. 15 at 4–5). Namely, she says the ALJ should have found that she was unable to engage in substantial gainful activity with her impairments because the vocational expert testified as follows in response to her hearing attorney's hypothetical:

> Q . . . If due to a combination of medical conditions, associated pain and/or mental impairments, this individual is unable to engage in sustained work activity for a full eight-hour workday on a regular and consistent basis. If said individual were likely to be off task 20% of the workday, in additional to regularly scheduled breaks, and if the individual is likely to be absent from work at least two days per month due to medically determinable impairment, would the application of those additional limitations, individually and/or collectively preclude all full-time competitive employment?
>
> A Yes, sir. Any of those limitations individually would be work preclusive.

(Tr. 47). Yet, Plaintiff's argument presumes that the hypothetical posed to the vocational expert accurately represents the Plaintiff's RFC. But no medical source, not even Dr. Kratz, opined that Plaintiff would be off task for at least twenty percent of her workday or would be absent from

10

work at least two days per month. And, as detailed above, the RFC crafted by the ALJ—which did not include restrictions related to off-task time or absences—was supported by substantial evidence. Thus, this portion of the vocational expert's testimony was not relevant to the ALJ's determination of whether Plaintiff could engage in substantial gainful activity.

In sum, the ALJ's evaluation of medical opinions, the evidence of record, and the hearing testimony was reasonable and consistent with Social Security regulations. And the RFC crafted by the ALJ was supported by substantial evidence. Accordingly, the Court finds Plaintiff's allegation of error without merit.

## IV. CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.

Date:  March 21, 2022                    /s/ Kimberly A. Jolson
                                         KIMBERLY A. JOLSON
                                         UNITED STATES MAGISTRATE JUDGE